## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW HAMPSHIRE

George Stanley

    v.                        Civil No. 09-cv-52-PB

Gerald Landers, et al.

### REPORT AND RECOMMENDATION

Before the court are George Stanley's pleadings (doc. nos. 1 & 3-5), alleging that defendant Gerald Landers, a state court security guard at Berlin District Court, is liable for violating Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131-12165 ("ADA"); for false arrest and excessive force; and for tortious acts and harassment violating Stanley's constitutional rights.  Additional defendants, Jason Jordanhasi, Landers's supervisor; the New Hampshire Administrative Office of the Courts ("AOC"); and Donald Goodnow, the AOC Director, are alleged to be liable for failing to investigate Stanley's complaints, failing to supervise Landers properly, and conspiring together to violate Stanley's civil rights.  The matter is before me for a preliminary review to determine whether Stanley has stated any claim upon which relief might be granted.  See 28 U.S.C. § 1915(e)(2)(B); United States District Court, District of New Hampshire Local Rule ("LR") 4.3(d)(1)(B).

Stanley's motion for a restraining order (doc. no. 4) is

also currently pending.  In the interest of judicial economy, I
deem the factual allegations in the motion and in its attachment,
along with the allegations set forth in Stanley's motion for
amended complaint (doc. no. 3), as part of the complaint for all
purposes in this case.  In the Order issued simultaneously with
this Report and Recommendation (hereinafter "Simultaneous
Order"), I will direct the Clerk to redocket the motion for
restraining order as an addendum to the complaint.[1]

<u>Standard of Review</u>

Under this court's local rules, when a plaintiff commences
an action pro se and in forma pauperis, the magistrate judge
conducts a preliminary review.  LR 4.3(d)(1)(B).  In a
preliminary review, the court construes pro se pleadings
liberally, however inartfully pleaded.  <u>See</u> <u>Erickson v. Pardus</u>,
551 U.S. 89, 94 (2007) (per curiam).  "The policy behind
affording pro se plaintiffs liberal interpretation is that if

---

[1]My decision to treat the factual allegations in the motion
for a restraining order (doc. no. 4) as part of the complaint is
not a decision on the merits.  I note, however, that Stanley has
not filed a verified complaint or affidavit in support of the
motion, as required for the issuance of a temporary restraining
order ("TRO") without notice.  <u>See</u> Fed. R. Civ. P. 65(b).  My
directing the Clerk to redocket the motion as an addendum to the
complaint is without prejudice to Stanley's ability to file a
properly supported motion for a TRO in the future.

they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled." Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997); see also Castro v. United States, 540 U.S. 375, 381 (2003) (courts may construe pro se pleadings to avoid inappropriately stringent rules and unnecessary dismissals).  The court must accept as true the plaintiff's factual assertions, see Erickson, 551 U.S. at 94, and any inferences reasonably drawn therefrom.  See Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 5-6 (1st Cir. 2005).  This review ensures that pro se pleadings are given fair and meaningful consideration.

Background

The complaint recounts a history of conflict beginning more than two years ago between Stanley and Landers at Berlin District Court in Berlin, New Hampshire.  Stanley entered the court on a number of occasions beginning in 2006.  During security screenings and at other times, Landers yelled at Stanley, knocked his hat off, took his cane away, hit him with the cane, and interrupted his speeches to judges and parties to court proceedings.  See Complaint at 1 (doc. no. 1).

On October 29, 2008, Stanley was in the lobby of the Berlin

District Court, using the phone in the courthouse entryway to
call 911 to report on Landers when Landers confronted him.
Landers threatened him while he was on the phone, told him to
leave the building, beat him, tore his clothes, and falsely
arrested him for disturbing the peace.  Id.; Mot. for Amended
Complaint at 1 (doc. no. 3).

On January 22, Stanley was sitting in a courtroom directly
behind a litigant, whispering suggestions to her with the court's
permission, when Landers approached him.  Mot. for Restraining
Order (doc. no. 4) at 2.  Landers told Stanley to stop and
threatened to throw him outside.  The week before, on January 15,
2009, Landers had similarly threatened to throw Stanley out of
the building.  Id.

Stanley has complained to Landers' supervisor, defendant
Jason Jordanhasi, and the AOC.  On December 1, 2008, Stanley sent
a notice of claim to the AOC regarding the October 2008 incident.
The pleadings contain no allegations regarding the disposition of
the AOC claim.  In addition, after Landers threatened him in
January 2009, Stanley sent a letter to the AOC accusing it of
failing to train and control Landers.  See id.  Stanley alleges
that Landers has responded with more harassment since Stanley has

4

filed reports and threatened to sue the defendants.  Id. at 1.

Stanley's pleadings include the following seven claims for punitive and compensatory damages:

1.   Landers is liable for violating Title II of the ADA by failing to provide Stanley with a reasonable accommodation for his walking disability.

2.   Landers is liable under 42 U.S.C. § 1983 for violating the Fourth Amendment in that:  (a) the October 2008 arrest occurred without probable cause; and (b) Landers employed excessive force.

3.   Landers is liable under 42 U.S.C. § 1983 for violating the First Amendment by (a) arresting him for making the 911 call; (b) harassing him because of his complaints to Jordanhasi and the AOC; and (c) interrupting his speeches and testimony in the courthouse.

4.   Landers has violated Stanley's right to substantive due process through his threats, harassment, and abuse of Stanley beginning in 2006.

5.   Defendants Jordanhasi, Goodnow, and the AOC are liable under 42 U.S.C. § 1983 for failing to investigate Stanley's claims and for failing properly to train or supervise Landers.

6.   All defendants are liable under federal civil rights laws for engaging in a conspiracy with one another to violate Stanley's civil rights.  Landers is additionally liable for conspiring with unspecified persons in the courthouse in effecting the false arrest.

7.   Defendants are liable under state law for Landers' perpetration of three intentional torts:  (a) false arrest; (b) assault; and (c) intentional infliction of emotional distress, relating to his arrest of Stanley in October 2008 and his mistreatment of Stanley on a number of occasions beginning in 2006.

<u>Discussion</u>

I.   <u>ADA Claim</u>

Stanley's claim under the ADA is that Landers failed to provide him with a reasonable accommodation for his disability, apparently relating to his use of a cane.  This claim arises under Title II of the ADA, 42 U.S.C. §§ 12131-12165, which relates to discrimination in the provision of governmental services.

> To prevail on a Title II claim, a plaintiff must demonstrate:
>
> (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.

<u>Buchanan v. Maine</u>, 469 F.3d 158, 170-71 (1st Cir. 2006).  An individual with a disability is a person who has a physical or mental impairment substantially limiting one or more major life activities; has a record of such an impairment; or is regarded as having such an impairment.  <u>See</u> 42 U.S.C. § 12102(2).  Public entities susceptible to suit include states, local governments, and their agencies and instrumentalities.  <u>Id.</u> § 12131(1)(B).

Landers is not a "public entity" under 42 U.S.C.

§ 12131(1)(B), and may not be sued under Title II in his
individual capacity.  See Abbott v. Town of Salem, No. 05-cv-127,
2006 WL 276704, at *4 (D.N.H. 2006).  As a preliminary matter,
therefore, I recommend dismissal of Stanley's ADA claim as
asserted against Landers in his individual capacity.

While Stanley has not clearly stated whether he also intends
to assert an official capacity claim against Landers, his
allegations of an ADA violation are conclusory and insufficient
to state such a claim.  Stanley's Title II claim apparently
relates to his use of a cane, his access to court, Landers'
taking away his cane, and his failure to accommodate his walking
disability.  See Complaint at 1 (doc. no. 1).  I note that
Stanley has also alleged that he entered the clerk's office and a
courtroom during the relevant time period.  He has failed to
assert any factual allegations suggesting that he suffered any
limitation on his ability to enter any part of the courthouse, or
otherwise suffered disability discrimination due to Landers'
conduct.  Cf. Kiman v. N.H. Dep't of Corrs., 451 F.3d 274, 285-86
(1st Cir. 2006) (prison officials entitled to summary judgment on
Title II claim for refusing to permit inmate to use cane, as
inmate received dayroom access in lieu of outdoor recreation,

would have received assistance in going to shower if he had
requested it, and pointed to no other program or service that he
was unable to access).  Accordingly, I recommend dismissal of
Stanley's Title II ADA claim asserting Landers' failure to
provide an accommodation under the ADA.

II.  Eleventh Amendment Impact on Section 1983 Claims

     Without citing a specific statutory cause of action, Stanley
has asserted various constitutional torts, a conspiracy to
violate his civil rights, and claims against the AOC and three
state officials, Landers, Jordanhasi, and Goodnow.  I construe
all of these claims as arising under 42 U.S.C. § 1983, which
provides a federal remedy for a citizen suffering a violation of
a federal right due to the conduct of a person acting under color
of state law.

     "[I]t is well settled that neither a state agency nor a
state official acting in his official capacity may be sued for
damages in a section 1983 action."  Fantini v. Salem State
College, 557 F.3d 22, 33 (1st Cir. 2009) (internal quotation
marks and citation omitted).  The Eleventh Amendment bars
retrospective actions for damages under section 1983 against an
unconsenting state, state agency, or state officers acting in

their official capacity.  See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993) (absent waiver, neither state nor agencies under its control may be subject to suit in federal court); Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989) (Congress did not abrogate state's Eleventh Amendment immunity under section 1983, citing Quern v. Jordan, 440 U.S. 332 (1979)).

New Hampshire has not waived its sovereign immunity for damage claims asserted under 42 U.S.C. § 1983.  Accordingly, the claims against the AOC should be dismissed, and any official capacity claims for damages under section 1983 against Landers, Jordanhasi, and Goodnow should also be dismiss under the Eleventh Amendment.

III. Seizure and Excessive Force Claims under Fourth Amendment

Stanley's principal claim under section 1983 against Landers in his individual capacity is that Landers violated his right to be free from an "illegal search and seizure."  Complaint at 1 (doc. no. 1).  Stanley's claim is that his rights were violated under the Fourth Amendment (as applied to the states under the Fourteenth Amendment), when Landers "falsely arrested" him in October 2008, and when he used excessive force in making the

arrest.  <u>See</u> U.S. Const. amend. IV ("[t]he right of the people to be secure in their persons, . . . against unreasonable . . . seizures, shall not be violated, and no Warrants shall issue, but upon probable cause").  Other than stating that he was arrested for disturbing the peace and that he filed a claim with the AOC to report incident, Stanley has not included allegations regarding the basis for his arrest or the disposition of any charge against him.  Noting that bailiffs have the power to arrest a person in a state courthouse, N.H. Rev. Stat. Ann. (hereinafter "RSA") § 594:1-a, I, I infer that Stanley was arrested without a warrant for the offense of disorderly conduct set forth in RSA § 644:2.

Finding sufficient allegations to make out a claim of a seizure under the Fourth Amendment, <u>see</u> <u>United States v. Ford</u>, 548 F.3d 1, 4 (2008), I turn to whether the arrest may have occurred without probable cause.  "Probable cause exists if, at the time of the arrest, the collective knowledge of the officers involved was sufficient to warrant a prudent person in believing that the defendant had committed or was committing an offense." <u>United States v. Link</u>, 238 F.3d 106, 109 (1st Cir. 2001).  This analysis requires an examination of the elements of the offense.

10

In New Hampshire,

A person is guilty of disorderly conduct if:

...

II.  He or she:
....
    (e) Knowingly refuses to comply with a lawful order of
    a peace officer to move from or remain away from any
    public place;[2] or

III. He purposely causes a breach of the peace, public
inconvenience, annoyance or alarm, or recklessly creates a
risk thereof, by
    (a) Making loud or unreasonable noises in a public
    place ... which noises would disturb a person of
    average sensibilities; or
    (b) Disrupting the orderly conduct of business in any
    public or governmental facility; or
    ....

RSA § 644:2, II-III.  Disorderly conduct may be charged as a

violation, or as a misdemeanor if the person fails to desist

after being requested to do so.  Id. § 644:2, VI.

According to the pleadings, Stanley was making a 911 call on

Landers in the courthouse lobby when he was arrested.  A

citizen's call for 911 reporting on a security guard's conduct,

---

[2]RSA § 644:2 defines "lawful order" to include an officer's
command to prevent or stop a person from committing any criminal
offense -- including disorderly conduct -- when there are
reasonable grounds to believe that the person is committing or is
about to commit the offense, or when the "person is engaged in a
course of conduct which makes his commission of such an offense
imminent."  Id. § 644:2, V(a)(2); see also id. § 644:2, V(a)(1).

placed from a public phone in the lobby of a public building, is
not like making a bomb threat or crying fire in a crowded
theater, patently disruptive or hazardous actions.  Cf. United
States v. Francis, No. 3:05-CR-27/RV, 2005 WL 2035497, at *2
(N.D. Fla. Aug. 23, 2005) ("Mere words alone cannot amount to
disorderly conduct unless they are fighting words, words known to
be false, or reporting some physical hazard in circumstances
where such a report creates a clear and present danger of bodily
harm to others, such as shouting 'Fire' in a crowded theater.").
The allegations set forth in the pleadings construed liberally,
in a light favorable to Stanley, suggest a lack of probable cause
for a disorderly conduct arrest.

Stanley has also alleged that Landers engaged in "police
brutality" during the arrest, specifically by beating Stanley and
tearing his clothes, an excessive force claim under the Fourth
Amendment.  See Rodriguez-Rodriguez v. Ortiz-Velez, 391 F.3d 36,
40 (1st Cir. 2004); see also Morelli v. Webster, 552 F.3d 12, 24-
25 (1st Cir. 2009) (listing factors relevant to excessive force
claims).

Stanley's allegations regarding the arrest and manhandling
are sufficient at this stage to avoid dismissal of the

12

unreasonable seizure and excessive force claims under the Fourth
Amendment.  Therefore, in the Simultaneous Order, I will direct
service of these claims on Landers in his individual capacity.

IV.  <u>Free Speech and Retaliation</u>

     Stanley asserts that Landers violated his First Amendment
rights, specifically:  (1) when Landers harassed him for
reporting his conduct to the AOC and Jordanhasi; and (2) when he
was arrested for calling 911.  In addition, Stanley asserts that
Landers violated his right to free speech by interrupting his
courthouse testimony and speeches.  Complaint at 1 (doc. no. 1).

     The first two aspects of Stanley's First Amendment claim are
claims of retaliation.  To establish a First Amendment violation
for retaliation, a plaintiff must show that he or she was engaged
in protected speech, the retaliatory conduct chilled or deterred
protected speech, and an intent to retaliate against the
plaintiff was a substantial or motivating factor for the
offending conduct.  <u>See</u> <u>Sloman v. Tadlock</u>, 21 F.3d 1462, 1469
(9th Cir. 1994).  "Government actions, which standing alone do
not violate the Constitution, may nonetheless be constitutional
torts if motivated in substantial part by a desire to punish an
individual for exercise of a constitutional right."  <u>Mitchell v.</u>

13

<u>Horn</u>, 318 F.3d 523, 530 (3d Cir. 2003) (internal quotation omitted); <u>see also</u> <u>Collins v. Nuzzo</u>, 244 F.3d 246, 252 (1st Cir. 2001) (retaliation claim based on licensing board's denial of license).

The right to petition the government for a redress of grievances has been characterized as "among the most precious of the liberties safeguarded by the Bill of Rights." <u>United Mine Workers v. Ill. State Bar Ass'n</u>, 389 U.S. 217, 222 (1967). Reporting an officer's abusive conduct to his supervisors and threatening to sue state officials may be characterized as speech protected under the First Amendment. Stanley's call for emergency assistance to report on Landers may similarly be characterized as protected speech, depending on the facts that may emerge in this case. At this time, I find that Stanley has included sufficient factual allegations to state a retaliation claim relating to the arrest, Landers' intensified harassment of Stanley, <u>see</u> Motion for Restraining Order at 1 (doc. no. 4), and Stanley's exercise of his right to engage in protected speech and to petition the government for a redress of grievances.

The last aspect of Stanley's First Amendment claim is his assertion that Landers' interruption of his courthouse speeches

and testimony violated his right to free speech.  According to
Stanley, Landers constantly interrupts his speeches and testimony
over his objections to judges (without alleging how the judges
have responded to these objections), and Landers specifically
threatened to throw Stanley outside if he continued to whisper to
a plaintiff in a courtroom with the court's permission.

The First Amendment protects an individual's right to speak
freely.  <u>See</u> U.S. Const. amend. I.  The right to speak in a
courthouse, however, is not unfettered.  "A curtailment of speech
violates the Free Speech Clause only if the restricted expression
is, in fact, constitutionally protected, <u>see</u> <u>Chaplinsky v. New
Hampshire</u>, 315 U.S. 568, 571–72 (1942), and if the government's
justification for the restriction is inadequate."  <u>Berner v.
Delahanty</u>, 129 F.3d 20, 25 (1st Cir. 1997) (citation omitted).
Not all utterances are protected speech, and reasonable, content-
neutral restrictions on the time, place, and manner of otherwise
protected speech may be imposed on those attempting to use the
nonpublic forum of a courthouse as a platform.  <u>See</u> <u>id.</u> at 26
(upholding judge's order prohibiting attorneys from wearing
political buttons in courtroom).

While Landers' interruptions of Stanley's courthouse

speeches and testimony may prove to be reasonable, content-neutral time, place, and manner restrictions, the allegations, construed liberally, suggest that Stanley's speeches and testimony were protected under the First Amendment, and that Landers' responses were not always legitimate.  Therefore, I will direct service of all three aspects of Stanley's First Amendment free speech and retaliation claims against Landers in his individual capacity.

V.   Substantive Due Process

I construe Stanley's allegations of Landers' persistent threats, abuse, and harassment, causing him stress and health issues, to be a substantive due process claim under the Fourteenth Amendment.  Specifically, Stanley has asserted that during security screenings and at other times, Landers has knocked off his hat, dismantled his cane, hit him with it, yelled, threatened arrest, and threatened to hurt him.  Motion for Restraining Order at 2 (doc. no. 4); see also Complaint at 1 (doc. no. 1).

The Fourteenth Amendment provides that states shall not "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  "The substantive

16

component of the Due Process Clause is violated by executive
action when it can properly be characterized as arbitrary, or
conscience shocking, in a constitutional sense." Espinoza v.
Sabol, 558 F.3d 83, 87 (1st Cir. 2009) (internal quotation marks
and citation omitted).

　　　"Various formulations have been used to identify conduct
sufficiently outrageous" to meet the shock the conscience
standard, "which deliberately was set high to protect the
Constitution from demotion to merely 'a font of tort law.'"
Cummings v. McIntire, 271 F.3d 341, 344 (1st Cir. 2001)
(citations omitted).  The "'constitutional concept of conscience-
shocking duplicates no traditional category of common-law tort,
but rather points clearly away from liability, or clearly toward
it, only at the ends of the tort law's spectrum of culpability.'"
Id. n.3 (quoting County of Sacramento v. Lewis, 523 U.S. 833, 848
(1998)).  Negligent conduct is always beneath the constitutional
threshold, while "'conduct intended to injure in some way
unjustifiable by any government interest' is most likely to
support a substantive due process claim." Cummings, 271 F.3d at
344 (citation omitted).

　　　The question of whether Stanley has stated facts sufficient

17

to stake out a due process claim based on Landers' misconduct in this case is a close one.  Stanley's claim is predicated primarily on verbal harassment, with some allegations of intentional physical contact, including Landers' hitting Stanley with his cane.  Stanley has not alleged any physically intrusive contact, however, or especially cruel or vicious acts.  The allegations in the complaint are similar to those that the First Circuit has found not to shock the conscience, even if otherwise unjustifiable, unnecessarily forceful, or reprehensible.  See, e.g., Cruz-Erazo v. Rivera-Montanez, 212 F.3d 617, 623-24 (1st Cir. 2000) (allegations that police officers had harassed plaintiffs for months, threatened harm, and pushed one plaintiff, who miscarried two days later, were not conscience shocking); see also Cummings, 271 F.3d at 343 (although police officer's conduct in swearing at and shoving pedestrian was unnecessary and resulted in severe injury to pedestrian, officer's conduct did not shock the conscience).

While Landers may be liable under state law for intentionally tortious acts, and his misconduct, if proven, indisputably deserves censure, Stanley has not alleged facts demonstrating that Landers engaged in the degree of

18

unjustifiable, intentionally injurious, malicious or sadistic conduct that is required for claiming a due process violation under the Fourteenth Amendment.  In light of First Circuit precedent upholding the dismissal of substantive due process claims involving misconduct allegations at least as offensive as these here, I recommend that the claim be dismissed.

V.    Liability of Supervisors under Section 1983

Stanley has alleged that defendants Jordanhasi and Goodnow are liable in their individual capacities for failing to investigate his complaints about Landers and for failing to train or properly supervise Landers.  There is no supervisory liability in § 1983 actions based on a respondeat superior theory of liability.  See Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009).  The standard set forth in the First Circuit for supervisory liability under section 1983 is that a supervisor may be held personally liable "for the behavior of his subordinates only if '(1) the behavior of his subordinates results in a constitutional violation, and (2) the supervisor's action or inaction was affirmatively linked to that behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence

19

amounting to deliberate indifference,'" leading inexorably to the
constitutional violation.  Pineda v. Toomey, 533 F.3d 50, 54 (1st
Cir. 2008) (citation and internal brackets omitted).  The First
Circuit's precedent, to be consistent with Ashcroft, 129 S. Ct.
at 1949, must be interpreted to make officials liable only for
their own actions or omissions.  In that case, the Court noted
that, "[i]n a § 1983 suit ... where masters do not answer for the
torts of their servants – the term 'supervisory liability' is a
misnomer.  Absent vicarious liability, each Government official,
his or her title notwithstanding, is only liable for his or her
own misconduct."  Id.

     Stanley asserts that he has made "repeated multiple written
and verbal complaints" regarding Landers' abusive conduct and
false arrests to Landers' supervisors, Goodnow and Jordanhasi,
which they ignored.  Specifically, Stanley filed a claim with the
AOC regarding the alleged false arrest and sent a letter to the
AOC following the January 2009 incidents involving Landers'
threats.  Although it is not entirely clear what sort of claim
Stanley filed with the AOC, the head of an agency has a duty to
investigate a claim filed with the agency under RSA § 541–B:11.
I infer from Stanley's allegations that he made similar

complaints to Jordanhasi.  Goodnow and Jordanhasi apparently took
no action upon these reports.

The allegations in the complaint are sufficient to state a
claim for supervisory liability as to Goodnow and Jordanhasi for
failing to investigate Stanley's complaints and supervise
Landers.  Accordingly, in my Order, I will direct service of this
claim against these defendants in their individual capacities.

VI.  <u>Civil Rights Conspiracy</u>

Stanley alleges two conspiracies in his complaint:  (1) a
conspiracy between Landers and unspecified persons in the court
to effect the false arrest; and (2) a conspiracy among all
defendants to deprive him of his civil rights.  Stanley does not
specify, however, the facts on which any of his conspiracy claims
are based.  Although "pro se complaints are to be read
generously, . . . allegations of conspiracy must nevertheless be
supported by material facts, not merely conclusory statements."
<u>Slotnick v. Garfinkle</u>, 632 F.2d 163, 165 (1st Cir. 1980) (per
curiam) (citation omitted); <u>see also</u> <u>Ashcroft</u>, 129 S. Ct. at 1951
(conclusory nature of allegations disentitles them to presumption
of truth).  Nothing in the complaint amounts to more than
conclusory allegations regarding the existence of a conspiracy

21

among or between any of the defendants or other persons to violate Stanley's civil rights.  Accordingly, any claim of a conspiracy in this case should be dismissed.

VII. <u>State Law Claims</u>

Stanley has asserted claims against all defendants based on state tort law, including theories of supervisory liability and respondeat superior.  These claims are based on Stanley's allegation that Landers is liable for three intentional torts: false arrest, assault, and intentional infliction of emotional distress.  These claims are within the court's supplemental jurisdiction for they are so related to the federal claims within this action that they form part of the same case or controversy under Article III.  28 U.S.C. § 1367(a).

A.   <u>False Arrest</u>

The torts of false imprisonment and false arrest consist of the "detention of the plaintiff by an invalid arrest caused by the defendants."  <u>Hickox v. J.B. Morin Agency, Inc.</u>, 110 N.H.438, 442, 272 A.2d 321, 324 (1970).  "An essential element of the offense is the absence of valid legal authority for the restraint imposed."  <u>Welch v. Bergeron</u>, 115 N.H. 179, 180, 337 A.2d 341, 342 (1975).

Stanley's allegations suggest a lack of probable cause for
his October 1998 arrest sufficient to avoid dismissal of his
Fourth Amendment claim.  These allegations similarly warrant
service of his state law claim of false arrest as to all
defendants in my Simultaneous Order.

    B.   <u>Assault and Battery</u>

Stanley's description of Landers' manhandling of him is
sufficient to state a claim for the intentional tort of assault
and battery under New Hampshire law.  <u>See</u> <u>Silva v. Warden</u>, 150
N.H. 372, 374, 839 A.2d 4, 6 (2003).  Accordingly, I will direct
service of this claim as to all defendants in my Simultaneous
Order.

    C.   <u>Intentional Infliction of Emotional Distress</u>

A defendant in New Hampshire may be held liable for
intentional infliction of emotional distress if the plaintiff has
shown that defendant's extreme and outrageous conduct
intentionally or recklessly caused plaintiff to suffer severe
emotional distress.  <u>See</u> <u>Morancy v. Morancy</u>, 134 N.H. 493, 496,
593 A.2d 1158, 1159 (1991).  Stanley's allegations are sufficient
to state a claim for intentional infliction of emotional
distress.  Therefore, I will direct service of this claim, too,

as to all defendants in my Simultaneous Order.

<u>Conclusion</u>

In summary, I recommend dismissal of the ADA claim, the substantive due process claim, and the conspiracy claims (enumerated above as Claims I, IV, and VI).  In addition, I recommend dismissal of all claims for damages under section 1983 asserted against the AOC and the defendants in their official capacities.  In my Simultaneous Order, I will direct service of the Fourth Amendment false arrest and excessive force claims, the free speech and retaliation claims, the section 1983 supervisory liability claim, and the state tort claims against the defendants (Claims II, III, V, and VII).

If the Report and Recommendation is approved, the claims identified herein will be considered for all purposes to be the claims raised in the complaint.  If Stanley disagrees with the identification of the claims herein, he must do so by objection filed within 10 days of receipt of this Report and Recommendation, or he must properly move to amend the complaint.

Any objections to this report and recommendation must be filed within  days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal

the district court's order.  See Unauthorized Practice of Law Comm. v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).


_____
James R. Muirhead
United States Magistrate Judge

Date: July 23, 2009

cc: George Stanley, *pro se*


JRM/NMD