UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

George Stanley

    v.                                      Civil No. 09-cv-52-PB

Gerard Landers,
et al.[1]

**REPORT AND RECOMMENDATION**

Before the court pursuant to 28 U.S.C. § 636(b)(2) is plaintiff's motion for preliminary injunction (document no. 9)[2], by which plaintiff seeks to enjoin defendants' alleged aggressive and abusive treatment of him in violation of his First and Fourth Amendment rights. Plaintiff asserts that for the past several years he has been harassed and mistreated when he has been at the

---

[1] In their Answer (document no. 14), defendants have provided the correct spelling of their names, and the correct spellings are used in this Report and Recommendation. The Clerk should note the correct spellings and take action accordingly.

[2] The motion was filed originally as a motion for a temporary restraining order (document no. 4) but it failed to comply with Rule 65(b) of the Federal Rules of Civil Procedure, and so the facts asserted in support thereof were liberally construed as part of the complaint, without prejudice to plaintiff properly refiling the motion. Plaintiff did, but the motion is being construed as one for preliminary injunctive relief because the complaint has been served and defendants have received notice. See Fed. R. Civ. P. 65(a).

local district court in Berlin, New Hampshire ("Berlin District Court"), and that his efforts to report that misconduct have resulted in further retaliatory abuse.  Named as defendants are Berlin District Court Security Officer Gerard Landers, who allegedly is primarily culpable for the mistreatment plaintiff has endured, Landers' supervisor Jason Jordanhazy, the interim manager for security at the Berlin District Court, and Donald Goodnow, the director of the Administrative Office of the Courts ("AOC").[3]  An evidentiary hearing was held on October 30, 2009.

The standard of review is well-settled and need not be repeated here.  See Esso Standard Oil Co. v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006) (stating factors plaintiff must prove to justify injunctive relief); CMM Cable Rep. v. Ocean Coast Props., 48 F.3d 618, 620-21 (1st Cir. 1995) (discussing purpose of preliminary injunction as enabling the court "more effectively to remedy discerned wrongs"); Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 18 (1st Cir. 1996) (finding irreparable harm where legal remedies are inadequate).  As

---

[3]The individual defendants were sued in their official capacities as well, but those claims, along with the claims asserted against the AOC itself, were dismissed based on Eleventh Amendment immunity following the standard preliminary review of plaintiff's pro se complaint.  See Stanley v. Landers, Civ. No. 09-52-PB, Report & Recommendation (D.N.H. July 23, 2009) ("R&R").

explained below, I find plaintiff is unlikely to succeed on the merits of his claims, has failed to demonstrate any ongoing pattern of treatment that could cause him irreparable harm if not enjoined, and recommend, therefore, that the injunctive relief sought be denied.

### Discussion

As the moving party, plaintiff bears the burden of proving the likelihood of prevailing on his claims.[4] Although plaintiff states separate constitutional violations and state tort law claims, his entire case revolves around Landers' alleged pattern of abusive mistreatment of him, purportedly done for no reason other than to prevent plaintiff from conducting business at the Berlin District Court and in retaliation for plaintiff reporting

---

[4]Following preliminary review of plaintiff's complaint, see R&R, the court determined plaintiff had alleged sufficient facts to support the following claims: 42 U.S.C. § 1983 claims against Landers for (i) his use of excessive force to falsely arrest plaintiff in violation of the Fourth Amendment, and (ii) his aggressive and threatening treatment of plaintiff in order to impede plaintiff's rights to free speech and to access the courts in violation of the First Amendment; 42 U.S.C. § 1983 claims against Jordanhazy and Goodnow for their alleged failure to properly train or supervise Landers or to investigate plaintiff's claims against him, which resulted in his unconstitutional treatment of plaintiff; and state tort law claims against all three defendants for false arrest, assault and battery, and intentional infliction of emotional distress based on the same alleged pattern of retaliatory, abusive treatment.

that misconduct.  Plaintiff testified that he has gone to the courthouse many times over the last four years, sometimes several times a day and almost every week, and has never been disruptive or in any way "brought this upon himself" or "asked for it," referring to Landers' mistreatment of him.  Plaintiff described the atmosphere at the Berlin District Court as being "North of the Notch law," with Landers acting as the sheriff of the wild west with his "fatalistic" gun, who arbitrarily singled plaintiff out to harass.  Although plaintiff contends Landers has exhibited a pattern of antagonism, abuse and discrimination for several years, he cites two particular incidents to justify the injunctive relief sought.

### A.  Plaintiff's Evidence

The first altercation occurred in the courthouse lobby of the Berlin District Court, near the security gate, on October 29, 2008.  Plaintiff testified that he was falsely arrested that day.  He explained that as he was going through the security gate, Landers was typically provocative and disrespectful, barking at plaintiff to take his hat off and to give him his keys and cane.  Plaintiff did as he was told, placing his cane on the table for Landers to inspect.  See Def.'s Ex. J.  Plaintiff reported that

after Landers inspected his cane, he tossed it back at him by "hurling" it across a table, causing it to fall to the floor. See id. Plaintiff also testified that Landers threatened him with the cane, thrusting and swinging it as if to hit him. After passing through the security check, plaintiff said that he proceeded to the clerk's office, while Landers repeatedly chanted loudly at him, saying "I'm going to arrest you." Plaintiff stated that, in response to Landers' incessant chanting, he said he would call Landers' bosses and went to the pay telephone near the door, where he called 911. Although plaintiff reported that Landers physically assaulted him[5] while he was making the call and clicked the receiver off to disconnect him, a tape recording of the call was played at the hearing and revealed that plaintiff was able to complete the call and hung up on his own. Landers then arrested plaintiff for disorderly conduct, though the charges were ultimately dismissed. Plaintiff now contends the arrest was retaliatory because he was reporting

---

[5] Plaintiff proffered the doctor's notes from his emergency room visit following the arrest as evidence of the injuries he sustained; however, the doctor opined that the reported "multiple body aches and joint aches . . . upon further questioning, are complaints that have been longstanding." Pl.'s Ex. 2. He also noted that plaintiff was able to move his extremities easily as he gestured in multiple, different ways, and concluded that plaintiff's emergency room "course was uneventful." Id.

Landers' behavior.

The second incident plaintiff proffered as evidence of Landers' bullying harassment involved Landers' behavior in the courtroom, on January 22, 2009. On that day plaintiff was assisting another litigant in a divorce matter. According to plaintiff, the marital master presiding over the proceedings had authorized plaintiff to advise the woman whose matter was before the court. Plaintiff was whispering to the woman when Landers "raced over to him" and demanded he be quiet or he would be thrown out the window. Plaintiff testified that Landers gestured wildly, which the judge saw but did nothing to stop. Plaintiff also reported that earlier in the month Landers had teased him about his use of a cane when he was going to the clerk's office, further evidencing Landers' harassing, discriminatory treatment. See Def.'s Ex. N.

When questioned whether there were additional, more recent incidents to support his claim of ongoing infringement of his right to access the court or to free speech, plaintiff described an incident in March 2009 when Landers kept "barking" an order at him, as if he were a dog, which interfered with a different case plaintiff had. Plaintiff also stated that he was offended that

Landers required him to take his hat off, but allowed a woman to leave her hat on.  Plaintiff explained there is no more recent evidence because he took a four month break from his litigation matters for the summer, but he did recall other problems he has had with Landers and other people working at the courthouse over the years.

  Plaintiff talked about Landers interrupting him when he was trying to speak in court, because Landers required him to move his belongings.  See Def.'s Ex. H.  As yet another example of Landers' intimidation, plaintiff remembered a day when Landers would not let him leave the Berlin District Court or give him his personal belongings back until his court business was done.  See Def.'s Ex. G.  Finally, plaintiff complained about how Landers prevented him from using the public bathrooms and required him to use a different staircase as evidence of both discrimination and harassment that impeded his First Amendment rights.  See Def.'s Ex. I & N.  Other incidents were described but the testimony was inapposite because it involved different people and earlier dates.  See e.g. Def.'s Exs. B & F. (plaintiff's report about a March 2007 problem with a different court security officer).

In support of his claims, plaintiff called Donna Wesson, a personal friend. Wesson testified she was aware of how much Landers bothered plaintiff and how afraid of Landers plaintiff is; however, she also denied that Landers barked at plaintiff, spoke sharply to plaintiff, was abrupt or angry with plaintiff or forcefully handled plaintiff's cane. Wesson explained she believed Landers treated plaintiff differently than other members of the public, including her, because of plaintiff's behavior and attitude.

Wesson was the woman in the courtroom on January 22, 2009 who plaintiff was assisting. Her testimony undermined, rather than corroborated, plaintiff's version of the events that day. She stated that plaintiff kept whispering, repeatedly trying to get her attention with "psst, psst, psst" which was interfering with her discussion with the judge. Wesson remembered that Landers forcefully told plaintiff to be quiet, but was not inappropriate, did not come racing across the room, and did not indicate he would throw plaintiff out the window. Wesson said that she understood that plaintiff had not been given permission to help her, and that Landers was simply trying to do his job of maintaining order in the court room.

B.  Plaintiff's Credibility

Aside from plaintiff's own testimony and those exhibits documenting plaintiff's own reports and complaints, nothing in the record supports plaintiff's version of events or remotely demonstrates that Landers has violated plaintiff's First and Fourth Amendment rights.  After carefully listening to the testimony of all the witnesses and reviewing all the exhibits, I find plaintiff to be completely incredible and his claims to be totally without merit.  The following evidence supports this conclusion.

**(i) The Cited Events**

The evidence established that neither the October 29, 2008 arrest nor the January 22, 2009 courtroom silencing occurred as plaintiff reported.

With respect to the October 29, 2008 "false arrest" and "excessive force" claims, the evidence showed that Landers had probable cause to arrest plaintiff for disorderly conduct and used only the minimal force required to effect the arrest. Landers' testimony directly contradicted plaintiff's and was substantiated by the affidavit of Rolfe Jensen, the other court security officer on duty at that time.  See Def.'s Exs. I & L.

9

Both men described plaintiff as uncooperative and belligerent, having thrown his cane onto the floor rather than handing it to Landers and having refused to pick it up when ordered to do so. Both men stated that when Landers attempted to give plaintiff back his cane, he backed away and shouted that the guard was threatening him and beating him.  Though Landers advised plaintiff to stop making this false accusation, plaintiff persisted, repeating it to the clerk's office, in the hallway, and finally on the 911 call.  Prior to the arrest, Landers asked plaintiff to calm down several times, but he continued with his disruptive shouting that Landers was threatening to beat him. The evidence showed that Landers did not touch plaintiff except to handcuff him after he completed his 911 call.

Landers' and Jensen's description of how the events unfolded that day was corroborated by objective evidence that made their story more believable and cast doubt on plaintiff's veracity. The tape recording of the 911 call objectively proved Landers did not interrupt the call as plaintiff had testified.[6]  In addition,

---

[6] The tape recording of the 911 call demonstrated that Landers did not prevent plaintiff from reporting the fabricated threat, by either shouting at him or cutting off the call before he was done.  The clear quality of the recording unambiguously established that plaintiff had misrepresented what had happened.

the emergency room notes state that plaintiff had no physical signs of injury, bruising or other evidence of excessive force, further undermining plaintiff's credibility.  See Pl.'s Ex. 2. Jensen also testified that plaintiff's obstreperous behavior on October 29, 2008 was not uncharacteristic of him, yet Landers never threatened plaintiff.  See Def.'s Ex L.  Based on this consistent, credible evidence, I find Landers appropriately exercised his authority to maintain order in the courthouse and had probable cause to charge plaintiff with disorderly conduct, see N.H. Rev. Stat. Ann. ("RSA") 594:1-a, I and RSA 644:2, rendering plaintiff's Fourth Amendment claims meritless.  See also Def.'s Exs. QQQ (job description) and SSS (article on threat posed by canes).

Similarly, the evidence showed that Landers' conduct on January 22, 2009 cannot be understood as either retaliatory or an unreasonable restraint of plaintiff's rights to free speech or to access the courts.  Landers' testimony about the events of January 2009 again directly contradicted plaintiff's story and, as explained above, Landers was a more credible witness than plaintiff.  His description of his interaction with plaintiff that day was substantiated by Donna Wesson's testimony and the

results of the investigation, which included interviews with Wesson[7] and the presiding marital master as well as a tape recording of the hearing. See Def.'s Exs. N & U. All the evidence except plaintiff's testimony consistently showed that Landers was simply trying to maintain order in the courtroom that day, as part of his general responsibilities as a court security officer and the specific request of the marital master.

Landers, Wesson and the marital master all said that Landers had been charged with the duty of maintaining decorum in the courtroom.[8] All three stated that plaintiff had not been authorized to assist Wesson. Landers testified that during the hearing the judge had motioned to him to quiet plaintiff down, so Landers put his finger to his lips as a gesture to be quiet. Landers, Wesson and the marital master also uniformly recalled that Landers did not race aggressively across the room towards plaintiff or threaten to throw him out the window. Their

---

[7]The report refers to Donna Thorgerson, not Donna Wesson; however, no one disputed that Donna was before the court for her divorce that day, so presumably she has changed her last name.

[8]Landers also explained that a recent court memorandum had been issued addressing the need for maintaining quiet in the court room so tape recordings would be an accurate record of the proceeding.

memories were corroborated by the audio recording of the hearing, which the investigator noted clearly captured conversational tones but contained no disruptive sounds that suggested Landers racing across the courtroom or threatening plaintiff.

This consistent evidence, from several different sources, not only established that the October 28, 2008 and the January 22, 2009 incidents did not happen as plaintiff stated in either his contemporaneous reports or his hearing testimony, it cast serious doubt on the accuracy of plaintiff's entire testimony. The several other incidents plaintiff proffered as evidence of Landers' misconduct were not convincing after listening to Landers' explanation of what happened and why.  See e.g. Def.'s Exs. D & G.  The evidence readily demonstrated that any curtailment on plaintiff's First Amendment rights was a reasonable, content-neutral restriction that Landers legally imposed as part of his regular responsibilities as a court security officer.  See Berner v. Delahanty, 129 F.3d 20, 25-26 (1st Cir. 1997) (explaining right to speak in the courthouse is not unfettered); see also Def.'s Ex. QQQ (listing job description of court security officer).  Nothing in the record supports a claim for a violation of plaintiff's First Amendment rights to

free speech or to access the courts, based on either the January 22, 2009 incident in particular or the general experience plaintiff has had at the Berlin District Court.

### (ii) Investigation and Supervision of Landry

There is no evidentiary basis to find supervisory liability against either Jordanhazy or Goodnow.  Neither defendant can be ascribed liability for enabling Landers' unconstitutional conduct when the evidence showed that Landers in fact did not violate any of plaintiff's rights secured by the First or Fourth Amendments. See Ashcroft v. Iqbal, __ U.S. __, __, 129 S. Ct. 1937, 1949 (2009); Pineda v. Toomey, 533 F.3d 50, 54 (1st Cir. 2008). Though that ends the matter, it bears noting that plaintiff failed to adduce a single piece of evidence that connected Goodnow, either directly or indirectly, to plaintiff's alleged mistreatment at the Berlin District Court.  Additionally, the evidence showed that Jordanhazy actually responded to plaintiff's complaints against Landers, as well as other people who worked at the courthouse, ensured that the reported incidents were investigated, and found the facts exonerated Landers.  See e.g. Def.'s Exs. N, U & V (plaintiff's complaint, investigative report and Jordanhazy's responding letter to plaintiff regarding the

January 2009 incidents), Exs. R & S (investigation of January 2008 incident with Landers and another court security officer with Jordanhazy letter to plaintiff), Ex. O (Jordanhazy investigation into December 2004 complaint by plaintiff against clerks), Exs. P & Q (plaintiff's March 2007 complaint about another court security officer, investigative report and Jordanhazy letter to plaintiff explaining no violations occurred), and Ex. RRR (showing Landers' training).  Accordingly, I find plaintiff's claims for supervisory liability to be meritless.

### (iii)   Plaintiff's Litigation History

The amount of evidence undermining the events alleged by plaintiff convincingly demonstrates that plaintiff's perception of how he has been treated by Landers and others at the Berlin District Court over the past four years does not reflect what actually transpired.  Based on his faulty recollection of the cited incidents, contrasted with the conforming evidence contradicting his story, I find plaintiff not credible.  While this evidence overwhelmingly established that plaintiff's allegations were not plausible, his trustworthiness was further eroded by two final pieces of evidence the defense proffered.

First, the defense showed that plaintiff has a history of contentious relationships with others and is a prolific litigator.  See Def.'s Exs. A – C, E –F, H, J–K, N & W (plaintiff's complaints about court clerks, a court secretary, other court security officers and Landers), Ex. P (investigation of plaintiff's March 2007 complaint attaching the Berlin police log of 416 contacts with plaintiff from September 2000 through December 2006); Exs. Y – PPP (44 court filings documenting litigation involving plaintiff).  As one report succinctly stated, "I find that the complaining party, Mr. George Stanley, is not credible and I cannot believe his statement.. . .  I feel based on this investigation that the report and information should be forwarded to the NH State Police for possible charges for violation of RSA 641:3, Unsworn Falsification."  Def.'s Ex. P.

Second, and most troubling, the defense proffered evidence which clearly indicated that plaintiff has financial assets despite having represented to the court previously that he has none.  See Def.'s Exs. TTT – VVV (corporate filings showing plaintiff as sole member of limited liability corporations and tax recordings showing the valuation of his real estate assets),

16

Ex. YYY & ZZZ (plaintiff's applications for in forma pauperis status in prior state court actions). Despite this evidence, plaintiff's motion to proceed in forma pauperis filed with this court, document no. 2, states that he has only $300 cash and no other assets, including no real estate. This evidence casts serious doubt on the representations plaintiff made to this court and erodes any basis of credibility he had remaining.

Based on all the evidence adduced at the hearing, I find plaintiff to be completely untrustworthy and his testimony untenable. I conclude, therefore, that he has no likelihood of succeeding on the merits of his claims.

## Conclusion

In sum, the evidence was overwhelming that plaintiff is at best a confused person who perceives discrimination, aggression, abuse and threats where none exists, or, at worst, a con artist who has intentionally defrauded the court. For all these reasons, I recommend that his motion for preliminary injunction be denied.

Any objections to this report and recommendation must be filed within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to

appeal the district court's order.  See <u>Unauthorized Practice of Law Comm. v. Gordon</u>, 979 F.2d 11, 13-14 (1st Cir. 1992); <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986).

                                                      _/s/ James R. Muirhead_
                                                      James R. Muirhead
                                                      United States Magistrate Judge

Date:  November 9, 2009

cc:  George J. Stanley, pro se
     Nancy J. Smith, Esq.